Hear the first case in re 650 Fifth Avenue. Good morning, Your Honor. May it please the court. I'm Ralph DuPont and I represent the Hagen family. As you know, it's been a long trail from 1984 to today, but it's a time I look forward to when we might address the application of the rule of law to terrorism episodes in the interest of curbing them. A very technical case about filing liens, getting extensions, perfecting liens, and handling, you know, it may be that there are problems beyond that, but those are a lot of the problems in this case. So I'm really interested in hearing, rather than, you know, justice for your clients, about why they have a lien here that's perfected. Yes, Your Honor. The perfection of the lien is a ... Judge Walker will forgive me if I ask what I think is a preliminary question, not about justice, but about specifically the law of this case. There was, of course, two decisions by this court back in July, and in your view, what is the impact of those decisions on what we are hearing today and whether all of the questions, the technical questions that would have been before us on the 1st of July are still before us? I think the questions are still before the court, Your Honor. The reason I say is not so much what is in the decision, the decisions which have come down, but because of the fact that one of the interests here, a Juan Assa Corporation, is still in this case, has never been up here, and its 40% interest in the defendant property known as 650 5th Avenue is subject to forfeiture. So therefore, what we do here today would have a direct impact on proceedings involving that case. Now, the court below has deferred further action on a couple of points that I'm mentioning here, but because they are jurisdictional, I think they're extremely important, regardless of what has been decided here before, because those cases, or both of them, one of them is seemingly the one involving, as I understand it, the judgment creditors, is likely to be headed for a writ of certiorari. The other, however, is likely to make an important contribution to the proceedings in both of those cases. Before the decision in the case that's going to trial in June. I'm sorry, Your Honor, I didn't hear that. It's because I'm nowhere near the mic. No, that's all right. I said that we can do this, you can do this, even without knowing the result of the trial that's going to be held and scheduled. Yes, I think so, Your Honor. I think this is very germane. And to illustrate that, the point I would like to begin with, and in all respect, Judge Walker, I didn't mean to trench on the court's time. This is probably my last appellate argument, but anyway, I want to talk about right now is the forfeiture action, which is the Appeal 15-2882. I think we begin with a question that I have sought to raise repeatedly, which is the jurisdiction of the court to forfeit property, which is also the subject of a valid writs of attachment or proceedings to enforce a judgment. What I'm talking about in that context is, in the context, at least, of the first appeal, 2882, is in the context of the innocent owner defense. The innocent owner defense, of course, is only going to be relevant if there's a forfeiture. If there is no forfeiture, because... Are the Agna parties an owner? Do they have a claim? And I think this is what Judge Walker was asking. Do they have a claim to the real property, to the property? Yes, they do, Your Honor. How's that? Well, what I would think about that, Judge Walker, is simply stated. I start with the attachment, excuse me, a lien, which was placed on the property in November of 2002. That lien was... That was a judgment. A judgment lien, a docketing lien. A judgment against Iran, you got a judgment against the agency, correct? Yes, Your Honor. Okay, but you're placing a lien against a particular piece of property. You don't have a judgment against the property by name. It's not named as such, right? The building... It's not... Yes, Your Honor, that's correct. It's against the building. That's correct, Your Honor, and I don't think it matters. Why not? Because a purchaser for value or somebody doing business with that entity needs to know that there is a lien, and if there's no lien against the building specifically, they're not... They can't be on notice. That in and of itself, Judge Walker, is a very interesting point because the statute speaks only... The building can be also dispositive. I hope this will be dispositive. Maybe not. Well, in the right way. The statute itself that we're referring to speaks in terms of real estate transactions, which would be superior to a lien after a period of 10 years. That is not what we're talking about. We're talking about, you know, you get a judgment, and then you don't perfect the lien against particular property by name. You cannot do so if the property is concealed. And you can't get a lien under those circumstances. I submit, Your Honor, that you can. Against whom? Against the world? Against everybody who might want to do business with you? I submit, Your Honor, that it is not terribly different than an inchoate tax lien. Your argument is that your judgment lien is, in essence, a lien against the building, the property? Yes. What's the basis? Is there a legal basis for that argument? What authority do you have? There is no case that I know of, Your Honor, which has dealt with the right of a holder of a terrorism judgment. Do you have any authority for the proposition that the judgment lien somehow, against Iran, somehow becomes a lien or a property interest in the real property? Well, Your Honor, please, the point I'm trying to make here— I'm asking you if you have any legal authority to support your point. There is no case I know of which has dealt with this problem. It will be dealt with for the first time by this court. No, it's been dealt with by other courts. Well, it has been dealt with— It's the other way. It's going against you, then. It's been dealt with in the context of lien renewal. It's been dealt with in the context of what is property under New York law, but it has not been dealt with in the context of Section 1610G. I'm making a judgment against Jones, and Jones has a majority interest in a corporation which owns a building. I don't have a lien against that building unless I file a lien against that building, naming the building, right? Because otherwise, anybody who wanted to buy that building wouldn't be on notice of the lien. Well, I have to go back, I guess, another step, perhaps, and see if I can make my point this way. Prior to Erie and under the Conformity Act, we proceeded under state law as far as enforcement of judgments were concerned and the like. We are still doing that today because of the way the federal rules are structured. So I get that. I now go to the court. I record my judgment. I take my docketing lien. I bring it over and record it in the New York court. Now I contend that I have a lien, just as any other New York judgment holder would have, against any property owned by the judgment debtor. Now comes the problem. The problem comes that along comes a buyer who wants to purchase the property, and he can't see that I've got a lien on 655th Avenue, so he spends his billion dollars to buy 655th Avenue. And I say, oh, sorry, too late. I have a lien. I say that that could very well be the case. And I compare this, I compare this, Your Honor, to the- We need a little legal support if we're going to say that. Well, I can't say there's legal support, but I can say there's parallel support in the way that the tax liens work. They, those tax liens are federal liens. Now, when the folks wrote the fissia, they didn't bother to put in any provisions for how to enforce those judgments. Now I have one. I have to enforce it. I'll do the best I can. So, DuPont, you have three minutes for rebuttal. Do you want to use it now, or do you want to- No, I'll, I'll go on to something else if I may, but that's my only point, Your Honor, is the comparison between those two. You're out of time. You have three minutes for rebuttal, which you can use now if you like, or you can save it for rebuttal. I'll save it for rebuttal. Thank you, Your Honor. And we'll hear from the other side. Thank you. Good morning, and may it please the Court. Martin Bell for the United States. Perhaps what makes the most sense is to begin with the point that Judge Sack raised. The government believes that notwithstanding this Court's rulings in the two, well, the two rulings that came down this past summer, that these issues are ripe for consideration currently for a number of reasons, chief among them that the standing problems facing the Haguenas are dispositive, I think, of any other issue. My concern was at least initiated by something rather simplistic, and that is that this is called a defense that we're arguing about. It may make no sense as a matter of law, but it's called a defense. The innocent owner defense, Your Honor? Yes. It's called the innocent owner defense, and I wanted to know whether the fact that it's a defense, whether it matters that this Court sent the case itself back to the district court means that it's too early to worry about whether there's a defense or not. I think, Your Honor, and in keeping with the principles through which this Court ordinarily operates, that the Court may determine this appeal based on the standing issues alone. In light of that, the Court could also determine the innocent owner issues, which I think are . . . We can determine, I guess maybe, that we can determine standing without ever getting to rightness or anything else. We can start out with standing, say there is no standing, and that's the end of the matter. I think, Your Honor, I think that the panel can do that, but the Court should also consider that the reasons for the defect in innocent ownership, the innocent ownership defense here, aren't going anywhere, which is to say that they are . . . Because the Hegna's claim and the argument behind the Hegna's order for show cause is based on this lien that names the wrong party, expired several years ago, and has other defects, which we've engaged in the briefing here. Those are issues that, I guess, are as ripe as they're going to be because they're fundamentally not going to change. So, I think that the Court could determine this based on the standing issues alone, which we believe are dispositive, but the Court could also delve into innocent donor defenses. The issues overlap, as I'm sure you've appreciated from the papers, and ultimately reach a similar outcome. Beyond that, I think that I would point out that there are numerous fatal defects here, and there isn't, as I think Mr. DuPont acknowledged, legal support that gets the Hegna claimants out from them. We don't live in a world or under a regime in which one can seek to get a lien against the world or the entire world of Iran's possible assets without actually identifying a specific property. There is no lien against anything even as specific as a lobby's interest, the partnership's interest, let alone the actual building that's the subject of the controversy here. That alone is dispositive. That's what I was also going to note, Your Honor. By way of belt and suspenders, the liens expired in 2012 under what is very clear law under the New York CPLR. This is something that I suppose the Hegna claimants could very well have done something about. They could have litigated the protective order. They could have sought. They could have done any number of things and did not. And for these reasons, along with the others that we've noted, we would ask the court to affirm the district court's termination to grant summary judgment and dismiss the claim. Thank you. Good morning, and may it please the court. Melissa Ginsberg for the Claimant Appellees, a lobby foundation and 650 Fifth Avenue Company. And I think I'd like to start with the question Judge Sack raised, which is how does this court's decisions from over the summer impact this appeal? And to answer that question, I think it's important to understand that there are two different decisions from the district court that are on appeal today. The first is the district court's decision denying the Hegna's motion for summary judgment on their innocent owner defense. And I think given that this court has vacated the order of forfeiture and property must be subject to forfeiture before there can be an innocent owner defense, that motion is now premature. However, there's also the second decision that the court issued, and that's the order granting the motion to strike. And that order, that decision remains every much as right and every bit subject to appeal as it ever did because a motion to strike, just like a motion to dismiss, helps promote the efficiency of litigation by looking at when parties have claims that they cannot possibly succeed on and removing them from the litigation at an early and reasonable time. And the Hegna's cannot possibly succeed on their innocent owner's claims. So let their two specific— You're referring to the second motion as a motion to strike. The government also moved for summary judgment. The government also moved for summary judgment. I mean, the Hegna defendant's parties moved for summary judgment, but the government moved for summary judgment or in the alternative to strike. Yes, that's correct. Does it matter whether we call it a government motion for summary judgment or a motion to strike? I don't think it makes a difference. I think the notable thing here is that a motion to strike or whether it's a motion for summary judgment that didn't use any evidence that wasn't in the pleadings, in any case, looking at the pleadings, looking at the undisputed facts, the very claim that they have and their liens, things that a court can very well consider on a motion to strike. Are you suggesting that we can, if we wish, we can begin and end with the motion to strike? Yes, absolutely. So let me talk about exactly why it is that the Hegna's cannot ever succeed. And there are two specific things that I'd like to focus on. The first, as to Alavi and the 650 Fifth Avenue Company, is that the Hegna claimants, they never actually claimed Alavi's or 650's property. And Rule G is very clear. In order to claim an interest in defendant property, a party must identify the specific property as claimed. Their claim covered Asa's assets, but it did not name Alavi. It did not cover any of Alavi's assets or 650's assets. And so they cannot possibly, you know, in argument on a motion for summary judgment or on appeal, then try to claim that they are innocent owners of those assets that they never filed a claim to. The second reason, and your honors have already addressed this a little bit, is that in order to be an innocent owner, a party must have an ownership interest. And the liens that the Hegna's claims they have here fail for three reasons. The first is that liens, those liens only apply to assets against Iran, assets belonging to Iran and MOIS. They do not enjoin any assets belonging to Alavi. They do not enjoin any assets belonging to 650, both because Alavi and 650 are not named in those liens, and also because as a factual matter, Alavi and 650 are not Iran. And this is actually another place where the court's decisions from this summer make a big difference, because what this court already held in the 14-1963 appeal is that as a matter of law, Alavi and 650 are not the foreign state of Iran. They're not alter egos of Iran. And because of that, as a factual matter, they cannot succeed. But even beyond that, on the law, they can succeed, because New York law is clear that as Your Honors have already discussed, a lien only enjoins property that is actually named, and if a lien is docketed under the incorrect name, it's no lien at all. And finally, those liens have expired. The real property lien expired after 10 years, so it's expired. And the personal property lien, which this court should not consider in any event because it was first raised on appeal, expired after 90 days. Thank you. MR. PETRICELLI. Good morning. May it please the Court, Patrick Petricelli on behalf of the Greenbaum, Acosta, Beer, and Kirshenbaum appellees. Unless the Court has any questions, we will rest on the brief that we submitted in this appeal. Thank you very much.  GOLDBERG. Thank you. We'll hear the rebuttal. MR. GOLDBERG. Thank you, Your Honor. I'll start, I think, with the last, which is that the personal property lien has expired after 90 days. As I understand the personal property lien situation, that arose by reason of writs of execution, which the Hagners obtained, which was served on Alavi, which was served on 655th Street. That personal property lien within a period of 90 days after it was served— MR. PETRICELLI. I thought we were talking about a lien in which you were trying to get real property. MR. GOLDBERG. We have both, Your Honor. MR. PETRICELLI. Okay. But you're talking about—now you're on the personal property. MR. GOLDBERG. Yes, because that was what counsel finished.   My assumption was that they were talking about—that your adversary raised the point of the principal expiration point here related to the real property, and the lien expired as to which a lien, if there was a lien, would expire at the end of 10 years. MR. GOLDBERG. Addressing the personal property lien with one more sentence is simply stated. That personal property lien is a priority lien. It is part of the enforcement under—  PETRICELLI. Is this argument below? MR. GOLDBERG. Yes, Your Honor. That's in my motion for— MR. PETRICELLI. Is it that you are raising it for the first time on appeal? MR. GOLDBERG. I am not, Your Honor. It was—  PETRICELLI. Is it in your brief? MR. GOLDBERG. I believe it is, Your Honor, and it's in the appendix of the brief. I believe we raised it on the motion for determining priorities and briefed it quite extensively. But in any case, the bottom line is that it became a part of a show cause order to turn over property. So at a specific request to turn over the personal property of Iran in the hands of Al-Avi or 650 or the rest of it.  GOLDBERG. What's the nature of those—that property? Do we know? MR. PETRICELLI. Cash and real estate, which is located outside of the state of New York. But the deeds and control of that property are in the hands of Al-Avi. As far as the expiration of the lien is concerned, I have never doubted from the day I saw the protective order, which was December the 26th or so of 2008, it said very expressly that I was not to go out and attach or execute or garnish or encumber property. I cannot renew a lien or renew a lien in New York State without encumbering the building. I cannot do so without serving the judgment debtor. The judgment debtor happens to be Iran. There is no way to serve Iran within New York State law, though such a way exists under federal law. So what I have suggested in my brief is that we—I am urging the Court to revisit the entire issue of how lien enforcement should proceed with a judgment rendered under the Antiterrorism Act.  CHIEF JUSTICE ROBERTS. Thank you. We will reserve decision on this case.